**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STANLEY F. TUCKER, individually, and as Co-Trustee of the Tucker Living Trust; and on behalf of all others similarly situated, ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-08-619-M |
| BP AMERICA PRODUCTION COMPANY, a Delaware corporation, ) ) ) | |
| Defendant. ) | |

**ORDER**

The Court has before it for review and consideration the following: Plaintiff's Amended Motion for Class Certification, filed October 25, 2010, the Response in Opposition to Amended Motion for Class Certification by Defendant BP America Production Company, filed November 23, 2010 and plaintiff's reply, filed December 21, 2010. The Court also heard testimony and received a variety of evidentiary materials at a multi-day evidentiary hearing held June 2, 3, 7 and 9, 2011. The parties' proposed findings of fact and conclusions of law were filed September 30, 2011.[1] On October 21, 2011 the parties' objections were filed.

Upon careful review of the parties' submissions as well as the testimony and evidence presented during the evidentiary hearing, the Court finds, for the reasons that follow, that plaintiff's

---

[1]Contrary to the Court's Order directing the parties' to submit proposed findings of fact and conclusions of law, defendant submitted a 65 page proposed order. When the Court requests a party to file a certain pleading, the party should file that pleading in the proper form and should submit any proposed order pursuant to Court's rules and procedures.

Federal Rule of Civil Procedure 23 motion for class certification should be denied.[2]

## I. INTRODUCTION

BP America Production Company, a Delaware corporation, ("defendant") is the exploration division of BP, PLC, an oil and gas exploration, drilling, and marketing company based in the United Kingdom. This lawsuit concerns calculations of royalty payments by BP under hundreds of individual oil and gas lease provisions with hundreds of royalty owners over the last decade in the N.E. Mayfield production area in western Oklahoma.

Plaintiff Stanley F. Tucker, individually and as Co-Trustee of the Tucker Living Trust, and on behalf of others similarly situated ("plaintiff"), requests an order certifying claims against defendant as a class action. Plaintiff further requests an order appointing him as Class Representative and appointing his counsel as Class Counsel.

In his amended complaint, plaintiff has alleged that defendant engaged in a course of conduct to deprive the proposed class members of royalty payments by (1) making improper deductions for productions costs, (2) selling gas to affiliated companies, (3) failing to properly account for fuel use, line loss and condensation, (4) breach of its fiduciary duty, (5) violating the Production Revenue Standards Act (PRSA), (6) actual/constructive fraud, and (7) improperly charging royalty to purchase equipment. In his amended motion, plaintiff limited the claims asserted to 28 oil wells producing into the NE Mayfield production area, and to the time period from 2001 to November 1, 2008. However, plaintiff's recent class description submission removes November 1, 2008 as the ending period for the proposed class.

---

[2]Though considered to the extent necessary to rule on plaintiff's amended motion for class certification, this Order does not resolve the merits of this case.

## II.  PLAINTIFF'S PROPOSED CLASS

In his Petition on October 4, 2007, then plaintiff Billy B. Tucker, who appeared herein both in his individual capacity and as Trustee of the Tucker Living Trust (hereinafter the "Plaintiff Trust"), sought certification of a class, under OKLA. STAT. tit.12, § 2023, *et seq*.[3] Three years later on October 25, 2010, in his amended motion before this Court, Stanley F. Tucker[4] sought certification of a class defined as:

> All persons who own or owned minerals subject to an oil and gas lease in the State of Oklahoma (except agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma, and/or persons whom plaintiffs' counsel are, or may be, prohibited from representing pursuant to the Rules of Professional Conduct, and/or overriding royalty owners and unleased mineral owners who have elected under an OCC forced pooling order to take the bonus/royalty option) from 2001 to November 2008 who received royalty on the sale and disposition of gas produced from properties linked to the Northeast Mayfield gathering system that was marketed and/or sold by BP America Production Company and/or its affiliates.

(Plaintiff's Amended Motion for Class Certification, Doc. No. 67, p. 1.)  Eight months later, during the course of the evidentiary hearing on plaintiff's amended motion, plaintiff moved to amend his class definition.  Over defendant's objection[5], the Court allowed plaintiff to amend the class

---

[3] Plaintiff filed his Petition in the District Court of Beckham County, Oklahoma on October 4, 2007.  (Doc. No. 1, Exhibit 1.)  The case was removed to this Court on June 16, 2008.  (Doc. No. 1)

[4] On October 21, 2010, the Court granted plaintiff's unopposed motion to add Stanley F. Tucker, son of Billy B. Tucker, as an additional party and dismissed Billy B. Tucker as a party to this lawsuit.

[5] Defendant objected to plaintiff's request to amend the class definition on several grounds, including: (1) that the request to amend was untimely as it was not made until after plaintiff rested his case in support of his Motion, thus denying defendant the ability to examine plaintiff's witnesses on the proposed amendment; (2) the amendment removed the ending date for the class making the temporal scope of the class indefinite; (3) the amendment encompassed putative class members who indisputably do not have a claim for "improper deductions" as defendant eliminated deductions in November 2008; and (4) plaintiff offered no evidence to support the number of class members to be added as a result of the elimination of the November 2008 ending date.

definition. Thus, plaintiff requests the Court to certify the following class:

> All persons and entities who own or owned minerals subject to an oil and gas lease in the State of Oklahoma (except agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma, and/or persons whom plaintiffs' counsel are, or may be, prohibited from representing pursuant to the Rules of Professional Conduct, and/or overriding royalty owners and unleased mineral owners who have elected under an OCC forced pooling order to take the bonus/royalty option) since BP's acquisition of Vastar in 2001 who received royalty on the sale and disposition of gas and all other hydrocarbon byproducts produced from properties linked to the Northeast Mayfield gathering system that was marketed and/or sold by BP America Production Company and/or its affiliates.

(Plaintiff's Proposed Class Definition, Doc. No. 134, p. 1.)

### III.    DISCUSSION

####    A.    Applicable Law

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)).

*Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S.Ct. 2541, 2550 (2011).

In *Vallario v. Vandehey*, 554 F.3d 1259 (10th Cir. 2009), the Tenth Circuit summarized several rules that govern this Court's decision under Rule 23. Initially, the appellate court reiterated that "a rigorous analysis of Rule 23's requirements" must be conducted before a class is certified

to "ensure that the requirements of Rule 23 are met." *Id*. at 1265-66. "Only if the district court is convinced that the requirements of the federal rules are satisfied may it certify a class." *Id*. at 1269. "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). In resolving the issue of class certification, the Court accepts as true the plaintiff's substantive allegations regarding the class, e.g., *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 573 (D. Minn. 1995), but does not examine the merits of the plaintiff's claims.[6] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Indeed,

> [i]n determining the propriety of a class action; the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

*Id.* at 178 (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)).

Rule 23(a) sets forth four conjunctive requirements which must first be satisfied for class certification:

> One or more members of a class may sue . . . as representative on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representatives are typical of the claims . . . of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). *See also Dukes,* 131 S.Ct. at 258. At all times, plaintiff bears the burden of establishing that each of the requirements of Rule 23 has been met. *Vallario*, 554 F.3d at 1267.

In addition to proving each of the four requirements of Rule 23(a), plaintiff also bears the

---

[6]The Court is not however prevented from reviewing the nature of plaintiff's claims and BP's defenses, the issues to be decided and the types of proof needed to resolve the issues. *See*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 and n.17 (5th Cir. 1996).

burden of satisfying one of the requirements of Rule 23(b). If each of the four Rule 23(a) requirements are met, Rule 23(b) states a class may be maintained if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). *See also Dukes*, 131 S.Ct. at 2548-49 and n.2.

It is not sufficient for plaintiff to merely plead the existence of the four requirements of Rule 23(a) and one of the requirements of Rule 23(b). *Id*. at 2551. Rather, "a party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be

prepared to prove that there are *in fact*, sufficiently numerous parties, common questions of law or fact, *etc*." *Id*.[7]

Frequently, as in this case, the Court's "rigorous analysis" will necessarily "entail some overlap with the merits of the plaintiff's underlying claim." *Id*. This is true because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 2552.

B.    Numerosity

In his amended motion for class certification plaintiff references 28 wells producing into the Northeast Mayfield Gathering System ("NEMGS") as the basis for his claims for the time period from 2001, when allegedly the improper deductions first began, to November 1, 2008. Plaintiff also submitted a March 7, 2008 "List of Royalty Owners," which he claims contains more than 900 names. Defendant asserts that, although plaintiff may have proffered evidence of the number of persons or entities who, as of March 7, 2008, owned royalty interests in wells connected to the NEMGS, plaintiff never identified the number of royalty owners who have been allegedly aggrieved by defendant's actions so as to have standing to pursue one or more of the claims being prosecuted by plaintiff. Defendant argues that plaintiff has therefore failed to demonstrate that the number of putative class members satisfies the numerosity requirement of Rule 23(a). Finally, defendant contends that following the decision to allow plaintiff to amend the proposed class definition during the evidentiary hearing, plaintiff did not submit any additional evidentiary material or testimony regarding the number of class members encompassed by the amended class definition. Thus,

---

[7]Because plaintiff has failed to prove each of the four requirements of Rule 23(a), the Court sees no need to address whether plaintiff satisfies any one of the requirements of Rule 23(b).

defendant argues that both before and after the second amendment of the class definition, plaintiff failed to demonstrate that the number of putative class members satisfies the numerosity requirement of Rule 23(a)(1).

Here there seems to be no question that this lawsuit involves the calculation of royalty payments by defendant under hundreds of individual oil and gas lease provisions with hundreds of royalty owners over the last decade in the NEMGS production area in western Oklahoma. *See* defendant's response in opposition at p. 1. As previously noted, in this case plaintiff bears the burden of showing that certification is appropriate and proper, *e.g., Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir. 1988), and the Court finds plaintiff has easily met this burden as to the first requirement. The Court therefore finds there is sufficient numerosity to make joinder of the proposed class members impractical and, as opposed to class certification, difficult, inconvenient and inefficient.

### C.   Common Questions of Law or Fact

Plaintiff contends there are several common issues of fact and law presented in this lawsuit, including: (1) whether defendant improperly bases royalty payments on affiliate sales, (2) whether deductions were improperly charged to royalty owners, (3) whether defendant owes a refund for deductions which are no longer taken, (4) defendant's failure to pay for line loss, fuel use, and condensate, (5) whether defendant breached its fiduciary duty, (6) whether defendant breached the implied duty to market, (6) whether defendant violated the PRSA by not properly informing royalty owners as to royalty payments, (7) whether defendant's "hedging" practice is proper, and (8) whether royalty owners are paid according to their leases. Plaintiff contends there need be only one issue affecting all (or a significant number of the class members) and the element of commonality

is satisfied. *Hallaba v. Worldcom Network Servs.,* 196 F.R.D. 630, 635 (N.D. Okla. 2000). In *Hallaba* the district court ruled in denying class certification that the differences in state laws and fact-intensive review of deeds involved precluded a finding of predominance of common issues and superiority of class proceeding required for class certification.

Defendant denies that any of the issues asserted by plaintiff meet the commonality test most recently set forth by the Supreme Court in *Dukes.* In *Dukes,* the Court stated, with respect to the claims of the class representative and the claims of the putative class members:

> Their claims must depend upon a common contention. . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Dukes,* 131 S.Ct. at 2551. Defendant contends resolution of any one of plaintiff's claims will not resolve, for the putative class, "one of the claims in one stroke ."

Specifically with respect to the claims regarding post-production charges, plaintiff contends all wells contributing to the NEMGS incur gathering, dehydration, and compression costs and that these costs should not be charged to royalty owners. Plaintiff contends these services did not enhance the value of an already marketable product, but were necessary to create a marketable product. Defendant contends the evidence presented at the evidentiary hearing shows at least two groups are wrongfully included in the proposed class due to a lack of commonality with other proposed class members. Defendant contends the first group is the royalty owners who never bore a charge for a post-production cost. Defendant contends Stanley Tucker is, in fact, included in this group as no post-production charges were ever paid from royalty attributable to one of his interests. Defendant contends this group also includes, for example, all of the putative class members who own an interest in the Keathley 1-31 well, none of whom have ever born a post-production charge

against their royalty share. Defendant contends the second group wrongfully included in plaintiff's proposed class consists of those royalty owners whose leases expressly permit defendant to charge the royalty interest for a proportionate share of post-production costs. Defendant contends this second group also includes Stanley Tucker because one of his leases expressly permits defendant to charge his royalty interest with a proportionate share of post-production costs.

With respect to plaintiff's claim regarding affiliate sales, plaintiff contends all the gas from the NEMGS is marketed by BP Energy Marketing, an affiliate of defendant's. Plaintiff also contends the royalty owners should be paid the best price available. Defendant contends that during the evidentiary hearing plaintiff's own witness testified that sales made through any affiliate entity at index pricing is an acceptable practice. Defendant also contends there are leases, including at least one lease owned by plaintiff, which contractually permits defendant to sell the produced gas to an affiliate entity. Defendant contends because some lease provisions specifically permit affiliate sales, plaintiff has failed to demonstrate that all members of the putative class "possess the same injury" as he alleges he suffered. *Trevizo*, 455 F.3d at 1163 (*citing Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). With respect to the other leases which do not directly address the topic of affiliate sales, defendant contends any sales to affiliates were made on the basis of the Gas Daily Midpoint index price.

Defendant contends the same is true with respect to plaintiff's claims regarding fuel use. Defendant contends the evidence presented at the evidentiary hearing shows a lack of commonality as a number of leases were identified which contractually permit defendant to use gas for fuel in operations. Defendant contends again that one such example is a lease owned by Stanley Tucker. Defendant contends because the terms of the leases are not uniform and, in fact, at least one of

Stanley Tucker's leases permits defendant to use fuel for its operations, that plaintiff has failed to demonstrate that all members of the putative class "possess the same interest or suffered the same injury" as he alleges he suffered. *Trevizo*, 455 F.3d at 1163.

With respect to plaintiff's claim regarding the drip condensate kept by Seminole, defendant contends the evidence introduced at the evidentiary hearing shows, at a minimum, that there are some wells behind the NEMGS that do not produce condensate. Defendant contends the Keathley 2-31 well which Dr. Stephen Becker identifies as being almost pure methane is such a well. Defendant contends that because a resolution of this claim would require a well-by-well, month-by-month analysis of the quality of the gas produced to determine if condensate was being produced by each well and captured by Seminole, there has been a demonstrated lack of commonality. Though not dispositive as to certification of the proposed class, defendant contends with respect to the alleged damages suffered by those royalty owners in wells which produced condensate that might have been captured by Seminole, the Court would have to review each of the leases to determine if the lease required defendant to pay royalty on condensate captured by Seminole for which Seminole never remitted payment to defendant. Therefore, defendant contends with respect to the condensate claim, that plaintiff has failed to demonstrate that all members of the putative class "possess the same interest or suffered the same injury" as he alleges he suffered. *Trevizo,* 455 F.3d at 1163.

Finally, with respect to plaintiff's claim regarding ownership of the equipment acquired from Seminole, defendant also contends that plaintiff has again failed to demonstrate commonality. As previously stated, not all royalty owners were assessed post-production costs, and the owners who never bore a post-production cost could have no basis to claim ownership of the equipment. Thus, with respect to the Seminole equipment claim, defendant contends plaintiff has failed to demonstrate

that all members of the putative class "possess the same interest or suffered the same injury" as he alleges he suffered. *Id*.

Upon review of the parties' submissions the Court finds the language in *Dukes* instructive. At least as to his improper deductions for production cost, fuel usage, affiliate sales and equipment ownership claims, plaintiff has failed to present evidence that defendant treats all royalty owners the same and that alleged common treatment presents a common question capable of classwide resolution. The Court finds that the varying terms of the hundreds of leases, relating to matters such as the method for calculating royalty, allowance for post-production charges or fuel use and affiliate sales demonstrate the inability to adjudicate the claims of the named plaintiff and expect the same result to apply to all members of the proposed class. The Court finds plaintiff has failed to identify issues of fact or law that are truly common to all persons included within the class definition, or to demonstrate that, if certification was granted, that this case could proceed as a class and reliably "generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551. There are, as discussed above, dissimilarities within the proposed class that will impede the generation of common answers. *Id*.

Having found each of the allegedly common claims are not, in fact, common to the class, the Court finds plaintiff has failed to demonstrate the existence of a common question of law or fact sufficient to satisfy the requirement of Rule 23(a)(2).

D. <u>Typical Claims of Representative and Class</u>

In his amended motion for certification, plaintiff also contends the typicality requirement of Rule 23(a) is satisfied when the named plaintiff's claims merely arise out of the same events or

conduct and are based on the same legal theory as those of the class. Plaintiff contends here that his claims are comparable to the class's claims and that the resolution of his case will simultaneously resolve the claims of the absent class members. Plaintiff argues that any differences in lease language would only be relevant as to the amount of damages each class member would recover and that the amount of damages recoverable does not destroy typicality.

Defendant contends the representative plaintiff's claims are not typical of the claims of all of the proposed class members. Defendant argues that typicality is satisfied if resolution of the class representative's claim will necessarily result in resolution of the claims of all members of the class. Defendant argues that the class representative's claims arising from his various royalty provisions are not representative of each other and, in addition, not representative of other members of the putative class. Defendant specifically points to the fact that plaintiff has both a "gross proceeds" lease and a "net proceeds" lease and those types of leases have different legal implications. Defendant further argues that this Court's decision in *Gillespie* and the Oklahoma Supreme Court's decision in *Mittelstaedt* hold a class of "gross proceeds" leases cannot be certified because the Court would have to inquire, at a minimum, for every royalty owner, for every month in the class period whether defendant obtained the "highest price available" or improperly deducted certain post-production costs. Defendant contends, specifically, that a finding that defendant improperly deducted post-production costs with respect to Stanley Tucker would not necessarily resolve the claims of any of the other royalty owners in the putative class and, for that reason, plaintiff fails to satisfy the typicality requirement. Defendant argues that the leases giving rise to the variety of interests owned by Stanley Tucker alone demonstrate the lack of typicality. Defendant states for example that one of Stanley Tucker's leases both expressly permits deductions for post-production

costs and expressly contemplates that sales of natural gas may be made to an affiliated entity. Defendant also argues that other of Stanley Tucker's leases are silent on the subject. Finally, defendant contends because at least one of Stanley Tucker's leases expressly permits the deduction of his proportionate share of post-production costs and one lease expressly contemplates and provides for the calculation of royalties on sales to affiliated entities, Stanley Tucker's position is in part antagonistic to other members of the proposed class.

It remains uncontested that there are hundreds of oil and gas lease provisions involved in this case. It also remains uncontested that there are different lease provisions relative to affiliate sales of natural gas, fuel use and deductions charged to royalty owners. The Court finds that upon review of the record in this case that the claims of the proposed class representative Stanley Tucker are not typical of the proposed class member's claims involving hundreds of lease provisions and, therefore, plaintiff has failed to demonstrate the existence of typicality sufficient to satisfy the requirement of Rule 23(a)(3).

### E.  Representative Fairly and Adequately Protects Interest of Class

The typicality inquiry and the adequacy inquiry overlap somewhat because "if the representative party's claims are not typical of the class, the representative party cannot adequately protect the interests of the absent class members." *In re Farmers Ins. Co., Inc., FCRA Litig.*, No. CIV-03-158-F, 2006 WL 1042450, at *4 (W.D. Okla. Apr. 13, 2006). In this case, as discussed above, the class representative's claims are not typical of the claims of the putative class members. In addition, a class representative can also be found to be an inadequate representative if he is not a member of the class. *Monarch Asphalt Sales Co. v. Wilshire Oil Co.*, 511 F.2d 1073, 1077 (10th Cir. 1975).

Plaintiff contends the adequacy inquiry only serves to uncover substantial conflicts of interest between the class representative and the class he seeks to represent.  Plaintiff contends a class representative is inappropriate only if there are substantial or fundamental conflicts which cause harm to some class members' claims while other class members benefit from the same representation.  Plaintiff also contends as an individual royalty interest owner and as co-trustee of the Tucker Living Trust he has sufficient personal knowledge of the facts underlying this case to serve as a class representative.

With respect to the final requirement of Rule 23(a), defendant argues that Stanley Tucker is not an adequate class representative in many aspects.  First, defendant offers Stanley Tucker's deposition testimony which demonstrated he lacked personal knowledge of the facts underlying this case, including the number of mineral acres owned by the Plaintiff Trust; the name of the well or wells in which the Plaintiff Trust owns an interest; and the name of the operator of the NMGS.  Defendant also contends Stanley Tucker admitted, in his deposition, that he had done no personal investigation into the Plaintiff Trust's claims, lacks familiarity with the facts of the case and thus is inadequate to serve as a class representative.  *Kelley v. Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405, 409 (W.D. Okla. 1990).

In his reply, plaintiff asserts he would undertake to study the case so as to familiarize himself with the facts.  (Plaintiff's Reply at 6.)  Defendant contends at the evidentiary hearing on his amended motion, it was again demonstrated that plaintiff lacks fundamental knowledge regarding the facts of the case and the claims being made.  Defendant contends for example, when asked on cross-examination, plaintiff could not identify a single provision of any of his leases which he claims were breached by defendant.  Defendant also contends plaintiff was unable to testify as to whether

he is making a claim relating to post-production charges and affiliate sales under some or all of his leases.[8]

Because the Court finds Stanley Tucker lacks a fundamental knowledge of the facts of this case, the Court finds that he is an inadequate class representative and plaintiff has failed to satisfy the requirement of Rule 23(a)(4).  To the extend Rule 23(a)(4) concerns the quality and competency of the plaintiff's counsel, the Court finds the plaintiff's attorneys could fairly and adequately protect the interest of the class.

## IV.   CONCLUSION

Based on the foregoing, the Court DENIES the plaintiff's Amended Motion for Class Certification [docket no. 67].

**IT IS SO ORDERED this 2nd day of December, 2011.**

/s/ Vicki Miles-LaGrange
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]Defendant does not challenge the adequacy of the class counsel team in this case.